**IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Cr. No. 05-185-04 (RMC) |
| | : |
| **TERENCE SILCOCK,** | : |
| | : |
| Defendant. | : |

**MOTION TO RECONSIDER ORDER
GRANTING GOVERNMENT'S MOTION FOR A DEPOSITION**

Defendant, Terence Silcock, respectfully requests that the court reconsider its grant of the government's motion to take the deposition of Mark Adderley. Defendant objected on both procedural and substantive grounds to the court's order at the hearing held on November 20th. The court denied defendant's objections. The reasons the court should reconsider its decision are set forth below.

**FACTS**

On October 12, 2007, the government filed a motion to take the deposition of Mark Adderley, one of the defendants in this case. The motion stated that it was supported by a memorandum that was filed ex parte and under seal. Apparently, no motion to file the memorandum either ex parte or under seal was ever filed. The government cited no rule or case that would permit the filing of its memorandum either ex parte or under seal.

Under the local rules of the court, defendant had eleven days to respond to the

motion. Despite this, on October 16th, only four days after the motion was filed, the court signed the order filed by the government granting the motion to take the deposition. The order contained no finding that the memorandum could be filed, or was properly filed, <u>ex</u> <u>parte</u> and under seal.

On November 20th, the date set by the court for the deposition, defendant objected on several procedural and substantive grounds to the court's order. Defendant's primary argument was that he had never been given an opportunity to oppose or respond to the government's motion for two main reasons: first, the court had granted the motion without ever giving defendant a chance to respond; and, second, defendant was unable to respond in any detail, because he had never seen the government's memorandum.

The government contended that defendant's objection was too late, citing no case or rule that required any objection to have been made earlier. The court, likewise citing no rule or case, decided that defendant's objection was untimely.

In addition, there were discussions about the government's delivery of a large volume of discovery that defendant received on the morning of November 20th. The court continued the deposition until November 28th, to give defendant's counsel more time to prepare for the deposition, in light of the volume of the materials the government turned over to the defendant on the morning of the originally scheduled date for the deposition.

At the conclusion of the hearing, the government agreed, and the court ordered, that all the materials related to Adderley's plea, including the deposition memorandum and the plea agreement be unsealed. The government gave defendant a copy of

Adderley's plea agreement in court. As described below, defendant also obtained a copy of the government's ex parte memorandum.

At the conclusion of the court appearance on November 20th, the government also gave defendant three of twelve transcripts of conversations between defendant and Adderley it falsely had listed in a November 19th letter as having been previously given to defendant.[1]  It refused, however, to give defendant transcripts of the other nine conversations.

In a letter dated November 20th, and received by defendant on November 21st, the government confirmed that it had provided the three transcripts, but gave no explanation for refusing to provide the other nine.  The letter also provided defendant a copy of the government's formerly ex parte memorandum that the court had ordered unsealed.  Defendant had asked the government for a copy of the motion in court, but the government told defendant it did not have a copy in court.  The government, though, redacted two sentences of the memorandum, stating in its letter that it "will ask the court to keep that portion sealed for reasons stated in the redacted sentences."  As of yet, no such motion has apparently been made.  The government redacted the two sentences despite the court's order unsealing the material, after the government had

---

[1] The government sent a letter dated November 19th, which defendant received on November 20th, accompanying 231 pages of transcripts of interviews with Adderley by British authorities in June 2000, and a three page report of an interview of Adderley by the Secret Service in October 2004.  As discussed in court, the letter contained two untrue statements.  First, it stated that defendant had not requested such materials, when in fact he had made such a request in late October.  The letter also stated that defendant had previously been provided with transcripts of twelve recorded conversations between defendant and Adderley, when in fact defendant had never been given any of these transcripts.

agreed to such an order, with no reservations.[2]

Adderley's plea agreement, provided to defendant on November 20th, requires him to cooperate with the government in a variety of ways, including the requirement to "testify truthfully before any Grand Jury in the District of Columbia, and elsewhere, and at all trials of cases or other court proceedings in the District of Columbia and elsewhere, at which your client's testimony may be deemed relevant by the government." In addition, at the November 20th court appearance, Adderley's lawyer assured the court and the government that Adderley would voluntarily return to the United States to testify at any trial of his codefendants.

## **DISCUSSION**

For a number of reasons, the court should reconsider its decision to allow the deposition in this case. The conduct of the government in obtaining the order, and the court in signing it, raise troublesome questions about the fundamental fairness of this proceeding. The circumstances fall far short of the "exceptional circumstances" required under Fed.R. Crim.P. 15.

---

[2] Upon return from court on November 20th, undersigned counsel called both prosecutors in the case in an attempt to obtain a copy of the memorandum. Voicemail messages were left for both. In light of the inability to obtain a copy from the government, counsel called the court's chambers and was able to obtain a copy. Thus, counsel has seen the two sentences the government redacted from the copy it sent.

I.  **The Court's Decision to Order the Deposition was Incorrect Because There are No Exceptional Circumstances that Justify Taking the Deposition**

Fed.R. Crim.P. 15 provides, in relevant part:

**(a)(1)**  A party may move that a prospective witness be deposed in order to preserve testimony for trial.  The court may grant the motion because of exceptional circumstances and in the interest of justice.

* * *

**(b)  Notice.**

    **(1)  In General**.  A party seeking to take a deposition must give every other party responsible written notice of the deposition's date and location.  The notice must state the name and address of each deponent.  If requested by a party receiving the notice, the court may, for good cause, change the deposition's date or location.

* * *

**(C) Defendant's Presence.**

* * *

    **(2)  Defendant Not in Custody.**  A defendant who is not in custody has the right upon request to be present at the deposition, subject to any conditions imposed by the court.  If the government tenders the defendant's expenses as provided in Rule 15(d) but the defendant still fails to appear, the defendant - absent good cause - waives both the right to appear and any objection to the taking and use of the deposition based on that right.

**(d)  Expenses.**  If the deposition was requested by the government, the court may - or if the defendant is unable to bear the deposition expenses, the court must - order the government to pay:

    **(1)**  any reasonable travel and subsistence expenses of the defendant and the defendant's attorney to attend the deposition; and

    **(2)**  the costs of the deposition transcript.

**(e) Manner of Taking.**  Unless these rules or a court order provides otherwise, a deposition must be taken and filed in the same manner as a deposition in a civil action, except that:

   **(1)**  A defendant may not be deposed without that defendant's consent.

   **(2)** The scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial.

   **(3)**  the government must provide the defendant or the defendant's attorney, for use at the deposition, any statement of the deponent in the government's possession to which the defendant would be entitled at trial.

**(f) Use as Evidence.**  A party may use all or part of a deposition as provided by the Federal Rules of Evidence.

**(g) Objections.**  A party objecting to deposition testimony or evidence must state the grounds for the objection during the deposition.

The law is clear that the taking of depositions in criminal cases is disfavored. United States v. Drogoul, 1 F.3d 1546, 1551 (11th Cir. 1993); United States v. Milian-Rodriquez, 828 F.2d 679, 686 (11th Cir. 1987); United States v. Ismaili, 828 F.2d 153, 159 (3d Cir. 1987); United States v. Hajbeh, 284 F.Supp.2d 380, 382 (E.D. Va. 2003). The "party seeking the deposition bears the burden of demonstrating that 'exceptional circumstances' necessitate the presentation of testimony through a deposition." United States v. Kelley, 36 F.3d 1118, 1124 (D.C. Cir. 1994). See also, Drogoul, 1 F.3d at 1552; United States v. Fuentes-Galindo, 929 F.2d 1507, 1510 (10th Cir. 1991). The Rule "clearly intend[s]" that depositions are permitted only in "rare instances." Hajbeh, 284 F.Supp.2d at 384. There is a "strong preference for live testimony" embodied in Rule 15. United States v. Ismaili, 828 F.2d at 161.

In its memorandum, the government relies primarily on Drogoul and United

States v. Johnpoll, 739 F.2d 702, 709 (2d Cir. 1984) (GM 5-6)[3]. The government neglects to mention, however, that in Drogoul, the court stated that "[i]n the ordinary case, exceptional circumstances do not exist when the prospective deponent has declared that he or she is willing to testify at trial." 1 F.3d at 1557. In Drogoul, the court allowed the deposition of foreign witnesses, who were willing to come to the United States to testify, primarily because depositions of even more witnesses who were not willing to come to the United States were being taken in the same place. Id. at 1557. The court in Drogoul also stated that depositions are authorized only when they "may be done consistent with the defendant's constitutional rights." Id. at 1551. In the present case, Adderley has declared that he is willing to testify at trial, and thus under Drogoul there are no exceptional circumstances to justify taking the deposition.

In Johnpoll, the witnesses that the government was allowed to depose either "flatly refused to come to the United States" or "refused unless the government agreed to certain conditions." 739 F.2d at 709. Thus, both Drogoul and Johnpoll are in contrast to the present case, where Adderley has agreed to come to the United States to testify and his plea agreement requires him to do so.

In United States v. Milian-Rodriguez, 828 F.2d 679, 684 (11th Cir. 1987), the defendant filed a motion to take the deposition of a foreign witness who was willing to come to Canada to be deposed, but not to the United States. The district court denied the motion in part because given the witness's "willingness to travel to Canada," he "could travel to the United States and testify in person at trial." Id. at 685. The present

---

[3] "GM" refers to the government's now unsealed memorandum.

case is even more compelling as Adderley has indicated his willingness to come to the United States and his plea agreement requires him to do so.

In Fuentes-Galindo, depositions were ordered of several illegal aliens who had been arrested after entering the United States from Mexico. 929 F.2d at 1508. The court found that the order to take the depositions did not satisfy the "exceptional circumstances" test as "the government could not establish that the witnesses would not be available to testify at trial." Id. at 1510. The government had made no showing on "the record that the witness' attendance could not be obtained by subpoena." Id. The same situation applies to the present case.

In the end, the government cites no case permitting a deposition, or finding "exceptional circumstances," where a witness has entered into a cooperation agreement that requires him to testify at any trials in the United States, and the witness has indicated his willingness to do so. Adderley specifically agreed in his plea agreement to appear at any trial where his testimony was deemed relevant by the government. The government omitted this fact from its memorandum, not surprisingly, because it completely undermines its contention that there are exceptional circumstances to justify the deposition. It is completely hypocritical and disingenuous of the government to enter into such an agreement, then claim in its memorandum that Adderley will be unavailable for trial, while failing to tell the court of the provision in the plea agreement that is directly contrary to its claim. Indeed, Adderley's lawyer confirmed that he would appear voluntarily in the United States for any proceedings at which the government requested his presence. This scenario hardly qualifies as an

"extraordinary circumstance" warranting a deposition.

## II. This Court Erred in Finding that Defendant's Objections to the Deposition were Untimely.

In addition to the substantive lack of merit to the government's motion, serious issues arise with respect to the procedural manner in which the motion proceeded. At the November 20th hearing, the government argued, and the court agreed, that defendant's objections to the deposition were too late. No rule or case was cited in support of this contention.

Because the government filed its memorandum ex parte and under seal, neither the government nor the court explained how defendant could have been expected to respond to the government's motion earlier than he did. As the court explained in Stewart v. Erwin, 503 F.3d 488, 502 (6th Cir. 2007), when the defendant and "his attorney have yet to see" the relevant documents, the defendant cannot "do exactly what he has been denied the opportunity to do," respond to the memorandum. (Quoting United States v. Hayes, 171 F.3d 389, 394 (6th Cir. 1999)). A defendant cannot be expected to "rebut evidence he has never seen." Id. This reasoning is directly applicable to the present case, and the court's decision that defendant's objection was late is inexplicable.

In addition, at the hearing on November 20th, the court indicated that it had signed the order accompanying the government's motion only four days after it was filed because the court was not aware that any of the defendants were represented by counsel in this case in the United States. While defendant does not doubt the court's statement, it is disconcerting for two reasons. First, undersigned counsel entered his

appearance in this case on November 7, 2005, two years ago. It appears as document #9 on the docket sheet, and there are only 17 items on the docket sheet. Second, on page 3 of the government's ex parte memorandum, a full paragraph refers to the fact that Mr. Silcock is represented by undersigned counsel. The latter fact raises the unfortunate appearance that the court simply "served as a rubber stamp" for the government. United States v. Leon, 468 U.S. 897, 914 (1984).

As discussed above, the government filed its motion ex parte and under seal without filing any motion to do so, or citing any authority for so doing. Although creating an exception for national security issues, judges in this district have recognized that ex parte "communications between a district court and the prosecution in a criminal case are greatly discouraged, and should only be permitted in the rarest of circumstances." United States v. Rezaq, 899 F.Supp. 697, 707 (D. D.C. 1995) (J. Lamberth). See also, United States v. George, 786 F.Supp. 11, 16 (D. D.C. 1991) (J. Greene); United States v. Libby, 429 F.Supp. 2d 18, 21 (D. D.C. 2006) (J. Walton); Application of Storer Communication, Inc. v. Presser, 828 F.2d 330, 335 (6th Cir. 1987) ("Ex parte proceedings, particularly in criminal cases, are contrary to the most basic concepts of American justice and should not be permitted except possibly in most extraordinary cases involving national security."). The court's order in the present case does not provide any basis for the ex parte nature of the proceeding.

Likewise, there is a strong presumption against filing pleadings under seal, see In re: Sealed Case, 237 F.3d 657, 667 (D.C. Cir. 2001), and counsel for the government in this case provided no basis whatsoever on which to rebut the

presumption. The government did not ask the court for leave to file its request under seal, it simply did so. This is contrary to the law of the D.C. Circuit, <u>Washington Post v. Robinson</u>, 935 F.3d 282, 289-90 (D.C. Cir. 1991). In accordance with <u>Robinson</u>, notice of a government's motion to seal must be placed on the public docket and the trial court shall allow interested parties to be heard prior to ruling on the motion. <u>Id</u>. The Circuit in <u>Robinson</u> specifically found that "advance notice of a motion to seal is generally necessary to afford interested parties an opportunity to intervene <u>before</u> the court hears and rules on a motion." <u>Id</u>. at 290 (emphasis in original). That was not done in the present case.

Everything the government and the court have done is contrary to <u>Washington Post v. Robinson</u>. In <u>Robinson</u>, the government requested in the trial court that a plea agreement be sealed. The court of appeals noted that:

> No motion to that effect had been filed or docketed in advance. The government provided no justification for sealing the plea agreement at the time of its oral request. Nor did the Magistrate Judge at the time afford any opportunity for interested persons to object to the sealing order, or articulate any findings on the record to support her decision to seal the plea agreement.

<u>Id</u>. at 284 (footnote omitted). In finding error in every step of that process, the court set forth requirements for filing matters under seal:

> (1) The government must file a written motion to seal the plea agreement and notice of that motion must be entered in the public docket;
>
> (2) The trial court must promptly allow interested persons an opportunity to be heard before ruling on the motion and entering the sealing order;
>
> (3) The trial court must articulate specific findings on the record demonstrating that the decision to seal the plea agreement is narrowly

>tailored and essential to preserve a compelling government interest; however, the trial court may file its findings under seal if it is necessary to protect the secrecy of the plea agreement;
>
>(4) The trial court must also place the fact that it has sealed the plea agreement on the public docket; and
>
>(5) the government may seek leave of the court to file under seal its written motion to seal along with the plea agreement itself, and any supporting document, pending the disposition of the motion by the court; however, notice of the written motion to seal must be entered on the public docket, and interested individuals must be afforded an opportunity to be heard before the trial court ultimately rules on the motion and makes specific findings on the record.

Id. at 289 (footnote omitted). Not even one of these requirements was met in the present case, yet the court allowed the government to proceed ex parte and under seal. To disallow defendant's objection after the government and the court disregarded clear D.C. Circuit law was improper.

The government claimed that it filed its memorandum ex parte and under seal because it includes information about Adderley's cooperation and because it might "compromise the government's ability to obtain custody of other defendants who remain at large" (GM 1). With respect to Adderley's cooperation, anyone could assume from the government's motion that Adderley was going to give testimony favorable to the government. Notably, the government does not refer to any danger, or fear of intimidation, to Adderley as a result of his cooperation. Cf., Washington Post v. Robinson, 935 F.2d at 289 (procedures for sealing plea agreements, must be followed in "all but the extraordinary case, for example where the physical safety of an individual may be at risk").

With respect to compromising its ability to obtain custody of the other

-12-

defendants, the government's memorandum contains no such information. In fact, the memorandum details that in 2005 the indictment "was widely reported in the international press," and that the government has had difficulties getting the defendants to come to the United States (GM 2). Contrary to the government's claim, there is nothing set forth in its memorandum to explain why public filing of its memorandum would increase its difficulties one bit.[4]

The procedure employed in this case by the government was particularly prejudicial to defendant because not only was he denied access to the government's memorandum, but also the court ruled on the matter before he had any chance to respond. As discussed above, the failure to give defendant a chance to respond gave the defendant no chance to discuss the infirmities in the government's motion. The court's finding that defendant raised the issue too late under these circumstances was clearly incorrect.

### III.　In Light of the Government's Failure to Provide Discovery, it would be Fundamentally Unfair to Proceed with the Deposition.

Finally, the government's failure to turn over discovery to defendant makes him unable to effectively cross-examine Adderley, and deprives defendant of his Sixth Amendment rights. The government has provided nothing about Adderley's criminal record, which the court on November 20th seemed to indicate was extensive, even

---

[4] Indeed, the government makes no reference to any attempt on its part to obtain extradition of anyone from England, likely because the extradition treaty between the United States and England precludes extradition of someone who "has been convicted . . . in the requested State for the offense for which extradition is requested," which applies to defendant.

though defendant requested Brady/Giglio material in late October. The government has provided Adderley's two statements, one in 2000 of 231 pages and one in 2004, along with some other minor documents, as well as Adderley's plea agreement. Even with the extra time the court granted defendant, he has not been able to adequately prepare, especially with respect to the 231 pages of statements. Ironically, the government has refused to even provide transcripts of all twelve conversations defendant had with Adderley, transcripts it falsely claimed in its letter it had previously provided to defendant. Along with all the other failings of the government in this case, it is fundamentally unfair to order Adderley's deposition under these circumstances, as it would be inconsistent with defendant's constitutional rights.

## CONCLUSION

For all the reasons discussed above, defendant respectfully requests that the court reconsider its decision, deny the government's motion to take the deposition, and proceed with the sentencing of Adderley.

Respectfully submitted,

"/s/"
A.J. KRAMER
FEDERAL PUBLIC DEFENDER
625 Indiana Avenue, NW
Suite 550
Washington, DC  20004
(202) 208-7500